## PABLO MUÑIZ, Plff.,

*v.*

## AMERICAN RAILROAD COMPANY OF PORTO RICO, Dft.

Law, No. 1134.

### COURT'S INSTRUCTIONS TO THE JURY.

Negligence—Measure of Damages.

1. In a suit for damages for personal injuries, the measure of damages is the wages lost during the time the plaintiff was in the hospital, the actual expense incurred by him on account of the injury, a reasonable amount for his suffering, and the diminution to his earning capacity, if any.

Railroad Train—Right of Way.

2. A railroad train has the right of way over its own track, and is not compelled to stop at every crossing.

Evidence—Burden of Proof.

3. The burden is on the plaintiff to prove his case by a preponderance of the evidence, and he must prove that he was injured, that he

NOTE.—On failure of railroad company to give customary signals as excusing nonperformance of duty to stop, look, and listen, see note in 3 L.R.A. (N.S.) 391.

On duty of traveler approaching railroad crossing as to place and direction of observation, see note in 37 L.R.A. (N.S.) 135.

Muñiz v. American R. Co.

was injured by the negligence of the defendant, and the damage suffered.

Witnesses—Credibility.

4. It is for the jury to determine the credibility of the witnesses.

Negligence—Comparative Negligence—Statutory Requirements—Waiver.

5. The fact that the plaintiff was to blame in driving his steam roller onto the railroad track does not preclude him from recovering if the engineer of the railroad company could have stopped his train in time to prevent the accident, and did not do so; but if the train was coming towards the crossing, and the plaintiff drove his steam roller onto the track without paying any attention to the warnings given by the engineer, then he cannot recover. Where the law in one part requires the railroad company to maintain a chain or other device at crossings, and in another part puts its regulations under the Department of the Interior, and the Department of the Interior, by arrangement with the railroad company, waived the placing of a chain at a particular crossing, an employee of the Department of the Interior cannot complain.

Negligence—Statutory Requirements.

6. If the law required the railroad company to put up a chain at a crossing, and the company did not do so, and the absence of the chain was not the cause of the accident, the plaintiff cannot recover.

Negligence—Contributory Negligence—"Stop, Look, and Listen."

7. A person approaching a railroad crossing is supposed to stop, look, and listen for an approaching train, and if he does not do so he is not exercising ordinary care and cannot recover because he has contributed to the accident.

Negligence—Ordinary Care—Obstructed Vision.

8. If a plaintiff in approaching a railroad crossing looks but does not see an approaching train because of intervening objects, he is exercising ordinary care.

Negligence—Loss of Presence of Mind.

9. Ordinarily in the case of a threatened railroad collision, it is one's duty to save his life at the expense of property, but where one could have saved his life by jumping, and did not do so because he lost his presence of mind, he is not precluded from recovering from the railroad company if the threatened collision was due to its negligence.

Opinion filed December 18, 1916.

*Mr. E. B. Wilcox* for plaintiff.

*Mr. F. H. Dexter* for defendant.

HAMILTON, Judge, delivered the following opinion:

Gentlemen of the Jury:—We have now reached the end of a
very interesting case, and it becomes my duty to instruct you
as to the law, and it is your duty to apply the law to the facts
as you find them. The case is a somewhat unusual one. The
place is probably familiar to us all, on the other side of the new
bridge over there toward Guaynabo, at the particular point
where the road to Cataño branches off. It seems—and I think
there is no dispute as to this—that the road from Cataño to Rio
Piedras, or rather Guaynabo, has been in use for some years.
Recently the insular government has put a bridge across the
Martin Peña passage there, and has extended the road from
Santurce over to join this road just spoken of. At first this
new road ran into the other old road at an angle, a rather sharp
angle; and the result of this was that there were two crossings
of the American Railroad at or about that place, that vicinity,
and at one of these crossings it seems that a chain, etc., was
maintained and at the other it seems that this was not the case.
Now there has been a change in that since the time of the acci-
dent, as I understand it, and we have to take the facts as we find
them at the time of the accident.

On a certain occasion, I think March 31st of this year, a
big road roller that you have had described to you,—there is a
picture of it in the evidence,—having the roller part in front
and the driving wheels behind, was at work in that neighbor-

hood. It seems to have been in charge of a man named Lopez doing some work. Exactly what the work was is not material now because he was not doing that at the time of the accident. Lopez for some reason left the road roller, and went off on some business or other, and it was left in charge of the plaintiff in this case, Pablo Muñiz. He had not at that time qualified as a machinist, "maquinista," I believe the expression is; but in point of fact he seems to have been in charge of that roller,—put in charge of that roller at least by Lopez on occasions like this when he was going off for a short time.' He had apparently been examined for the position of "maquinista" before this, but his papers were not issued, and in point of fact were not issued until after the accident. So that for the purpose of this suit he had not yet become a qualified "maquinista." He seems to have been working at that particular time for 80 cents a day or thereabouts. If I recall the evidence correctly, one or more witnesses said that he had received $2 a day on other occasions before that. That seems to be contradicted by the official pay rolls, which show that he did not get $2 a day before the accident. I do not undertake to say which of those shall influence you. I think there is a contradiction there. But at all events he was left in charge of this machine, and the evidence is conflicting as to what he was to do with the machine. The evidence of the plaintiff himself was that he was to take it over to Cataño. That does not seem to be borne out by all of the other evidence. At all events what happened was this. The plaintiff started the machine going over towards Cataño. He was on the part of this high road that is to the left of the American Railroad. To go to Cataño he had to cross the American Railroad some distance further on. He propelled the engine until it got either just

short of the track or upon the track, according to the testimony of witnesses. That is the point you will have to decide, how far he had actually gone. At that time a railroad train, a freight train with open gondola cars, of the American Railroad was coming from Santurce going toward Bayamōn. The two unfortunately got to the crossing at about the same time, with the result which might be expected. There was a collision, and Pablo was badly injured, not fatally, fortunately, but still badly injured for the time being. He was taken to a hospital, and was there, I think, a month, or for some time at all events. His expenses for doctors and nurses were not paid by him, but he testified, I think, that he spent some $16 while in the hospital. He certainly was out of employment for some time. There is no evidence that anybody paid him for the time he was in the hospital. After getting out of the hospital, or perhaps while he was in the hospital, a certificate showing that he had passed an examination for machinist reached him, and after leaving the hospital it would seem that he has been qualified to earn $2, and has sometimes earned $2 a day as a machinist. Right at the present I think the testimony is that he is earning $1 a day at a certain employment.

This is not a suit by the American Railroad for the road roller running into the engine and injury to the engine. It is not a suit by the Insular government against the American Railroad for injury to the road roller. It is neither of those. There was an injury to both the engine and the road roller. It seems, from the evidence and from the photographs introduced, that in this collision part of the road roller went over on one side of the track and part on the other. The engine itself was pretty well demolished and turned over on one side. Whatever

loss there was, it is not in this case at all. This is simply a suit by Pablo Muñiz against the American Railroad Company for damages not exceeding $5,000 as claimed for injuries to him received, as he says, from the negligence of the American Railroad Company.

All of us, in going to our office and occupation in this world, have to respect the rights of others. No one can live to himself alone. We have got to take into account that other people are in the world with us. They have their rights just as we have our rights, and Pablo Muñiz had a right to cross that track and the American Railroad Company had a right to use that track. It is unfortunate that there was a collision, and we have to settle who was to blame for the injury to Pablo Muñiz.

1. Let me take up the element of damages first, and get it out of the way, as it is the simplest element in the case. The damages from that injury, if you find there was any liability at all, would not exceed, so far as money is concerned—and that is all you can give if anything at all—the amount of the money value of his wages during the time he was in the hospital, a month or more, whatever that might be, plus whatever you may see fit to allow for his suffering. Unquestionably he suffered a great deal. No one can go through a shock like that, be unconscious and be laid up for a month or more, without suffering. There is no money standard for suffering of that sort. At the same time the measure is not what any one of you would be willing to go through the suffering for. That is not it. That is too high a standard. But a reasonable compensation for the suffering he endured. Then a third element of damages would be the diminution to his earning capacity, if that be a fact. If you find that the accident made him more serviceable to the In-

sular government than he was before, that he has earned since the accident more than he did before, that would not be a ground of inference either against the Insular government or against him. The examination was before the accident, and so had nothing to do with the accident itself. His earning capacity would be this new earning capacity that he had acquired through this examination. But if you find that he can now earn $2 a day, that he is not physically injured, that he can now earn what he did earn or could have earned before, there is no diminution of his earning capacity. There would still be taken into account whatever he paid out in actual expenses, and whatever you may think is a fair remuneration for his suffering, but there would not be taken into account anything for diminution of his earning capacity as would happen in a case where a man loses a leg or a hand. But if you find that this plaintiff can now earn less than he could before, that would be a diminution of his earning capacity and would be taken into account by you if you find damages. But if you find that he was simply injured for a certain length of time, you would allow a certain amount for his suffering and what he was out for that length of time. It is for you to solve that particular element of the case. That is the measure of damages, if you find any damages at all.

2. A more important point, because it is the crucial point in the case, is as to negligence. I have no right to do anything in the pursuit of my own business that would injure any of you. I would have no right from this bench,—perhaps such privileges are allowed a judge,—I would have no right to say something about a member of the jury that would injure him in the community. That would be an injury for which I would be responsible. I would have no right to run an automobile reckless-

Muñiz v. American R. Co.

ly into a fellow citizen. I have got to conduct my affairs in such a way as not to injure another. So in this particular case, the American Railroad Company had a right to use its track. It had the right of way over its track for that matter. The very essence of a railroad is to have some sort of a schedule. Just as soon as a train has got to stop at every crossing and look out for people on the track, you have no railroad at all. It would be worse than none. It has the right of way over its track for the whole length.

3. Before I take up the question of negligence, let me mention one thing which I should have mentioned first. There are certain things which come up in every case. One is that the burden is upon the plaintiff. Pablo Muñiz has got to prove his damages. He has got to convince you by a preponderance of the evidence of three things: First, that he was injured. There is no doubt about that. Second, that he was injured by the negligence of the American Railroad Company. That is a matter upon which I will spend some little time. And the third is the matter of damages. I have discussed the damages first. The burden is on the plaintiff to prove his case by a preponderance of the evidence; not by a majority of the witnesses, but by the weight of the evidence. I dare say there is not a man on this jury who does not know some man whose statement he would take against the statements of six certain other men. It is the question of credibility of the witnesses, and not of the number.

4. What is the credibility of the witnesses? I mention it, and you have occasion to think of it in this case, because you have on each side several kinds of witnesses. You have "jíbaros" for instance on one side. It would be a mistake to say there is anything against the testimony of a "jíbaro." He may be just as

Muñiz v. American R. Co.

upright and honest a man as there is in this court room. The
fact that he is of lowly life and of little education should not
weigh against him. Now the circumstance that they do not
want to tell facts: You ask them a question and nine times out
of ten they go on and tell you something else than the answer
to your question. That is no reflection upon them at all. That
seems to be their nature. So, in considering the testimony of the
"jibaros," you are not to start with any impression against them
at all. What they know they know just as well as you or I,
and there is a certain way of getting at it. And the fact that
they may be wrong as to measurements and distances throws
no necessary discredit upon the rest of their testimony. You
will find people who are good judges of certain things and poor
judges of others. But if you find that a "jibaro" or a presi-
dent of a railroad company deliberately misstates a fact, then
and then only can you question his testimony. You would then
be at liberty to say: Here is a man who has lied as to a ma-
terial fact; I will not believe him at all. That comes up in the
experience of all of us. Or, if you find a witness who is care-
less in his statements, or has no powers of observation and gets
things wrong, not necessarily because he gets tangled up in his
examination, because that may happen with almost any witness,
but if you find that a man is careless and mistaken about what
he says you may disregard that. So, you see the matter of wit-
nesses is something for you to consider. You may find that
certain witnesses are biased, but because a man is employed by
one side or the other does not necessarily prove that his testi-
mony is incorrect or that he is lying. That is not so at all. If
you do think from all the evidence in the case that any witness,
whether for the plaintiff or for the defendant, is acting under

a bias, is afraid of discharge, and that is influencing his or her testimony, then you would have a right to place very little reliance upon that witness's testimony, or disregard it as you please. But there is an old legal maxim, false of one, false of all, that does not always apply. It may be that some part of his testimony would supply a missing link in the case. But the matter of credibility of witnesses is one for the jury exclusively. I would have no right, and do not desire to tell you, that you should not believe a certain witness here. That is for you under all the circumstances of the case to determine, and the weight that you will give to the different witnesses. So much for what will come up in any case as to the burden of proof and the character of witnesses.

5. Taking up the facts of this particular case: There was this accident. Who was to blame for it? That is the point in this case; not the fact that there was an accident, not the fact that the plaintiff was injured and suffered a great deal. That is not the point in this case. The point is, Who was to blame for it? Whose negligence was it? That you will find in this case is not a very simple matter. The plaintiff says in his complaint that the defendant, the American Railroad Company, was negligent in two respects: First, in running its train carelessly and recklessly, not noticing that the plaintiff was on or near the track. I charge you that if you find, taking an extreme case, that the plaintiff had got the machine upon the track, and had got it stalled,—if you believe that is a fact,—even if he was to blame in getting there, and the engineer of the railroad company saw that at such a distance that he could have stopped his train, if that is so, the engineer was to blame for the accident, and the defendant, the American Railroad Company, would have to be

Muñiz v. American R. Co.

held responsible for his action. If, on the other hand, the train was coming along in the usual manner, or going faster than usual for that matter, and Pablo Muñiz was not on the track, but nevertheless he continued onto the track or so close to it that there could be a collision, and he did not pay attention to the bell and whistle which were sounded and the shouts of people around him, if he was so careless that he did not pay attention to those things and got himself into this trouble, it was he who got himself into trouble, and he cannot blame the company. There are those two extremes, and you have got to settle which is correct. The case, though, is not quite so simple as I have stated. The plaintiff says there are two negligences, to use that expression, on the part of the defendant. One was, as I have stated, that the company was operating its train without regard to him on the track, or so near the track that they ought to have seen him. The other act of negligence charged is that it did not put and maintain a chain or other device as provided for in § 372 of the Revised Statutes of Porto Rico. I charge you as to the matter of chain, etc., that it is not an absolute duty. It is made in the statute a crime for the company not to maintain a chain and other device, and other parts of the law say that this regulation is under the supervision of the Department of the Interior. There are two things to be taken into account. In the first place, if you believe from the evidence—and the papers and testimony are before you—that the Department of the Interior waived the placing of a chain or other device at the crossing in question, then I charge you that whatever might be the law as to the general public,—as to you, for instance, coming along in an automobile,—does not concern us; that the Department of the Interior was competent at least to make such an arrangement with the

American Railroad Company so far as to affect the employees of the Department of the Interior, and the plaintiff was an employee of the Department of the Interior. So, if you believe in this case that the Department of the Interior had arranged with the American Railroad Company that they were excused from having a chain at this particular crossing, that arrangement was good, and an employee of that Department could not come along and say the arrangement was bad. Whether that arrangement was actually made is for you to determine upon the facts of the case, the letters to and fro, and the acts of the parties themselves.

6. But another point apart from that, if the law had required the putting up of chains, and the company did not put a chain at this particular crossing, and that was not the cause of the accident, it would not make any difference. For instance, if Pablo Muñiz got upon this railroad track through his own fault, if the putting of a chain had nothing to do with the accident, it need not be taken into account. The contention of the defendant is that the Department of the Interior excused the placing of a chain at this crossing for this reason. You have observed from the evidence that this road from Santurce through to Guaynabo is a fairly straight line; that there branches off from it this road to Cataño; that the American Railroad crosses after this division of the two roads, and that makes the American Railroad cross both branches of this road,—one going to Cataño, and one going to Guaynabo. It seems from the testimony that these two crossings are a comparatively short distance apart. You can readily see from one to the other, according to the undisputed testimony. I charge you that, if the Department of the Interior saw fit to arrange with the American Railroad Com-

pany, that on account of the proximity of the two crossings the maintaining of a chain at one was sufficient, that is all right as to the employees of that Department.

7. So much for what the plaintiff claims. The defendant, on the other hand, says that supposing there was negligence on the part of the defendant, nevertheless the plaintiff himself contributed to his own injury by his own negligence. If that be so,—and I will show you how it came up,—the plaintiff cannot recover. In other words, in a case like that, the negligence of the defendant was not all that caused the injury. If the negligence of the plaintiff himself helped cause the injury, he cannot sue his partner in the negligence. How does that come up? The defendant says that the plaintiff was negligent in two or three respects. In the first place, that in operating this road roller he did not, when he got near the railroad track, stop, look, and listen for the approaching train. I charge you that if that is a fact, whether there was a chain there or not would make no difference. That is where the absence of the chain would come in. If there was no chain there, there ought to have been; and the plaintiff nevertheless went up to the track, and did not look up and down and did not stop and did not listen, and in consequence of that this train came down upon him and hit him. He helped bring about the accident, not intentionally of course, but his negligence contributed to the accident. I fancy that you will have to put some consideration on that part of the case; if that was a fact, and you find that Pablo did not do that,—did not exercise what we call ordinary care,—then he helped bring about the accident, and he cannot sue the railroad company, who, in the eye of the law, would be his partner in negligence.

8. On the other hand, if you find that the plaintiff did exer-

Muñiz v. American R. Co.

cise ordinary care in examining the track, or if the crossing was of such a character that that was impracticable, if there were any intervening objects, etc., as to that you will have to be the judges, because you have heard the evidence. He would then be excused from such examination of the track; but if there was nothing in the way it was his duty to look up and down the track, and it would be his duty to look up and down the track if there was something in the way. As to whether that is so you will have to judge for yourselves.

9. A second kind of contributory negligence that the defendant sets up is this. It is a very interesting point. The defendant says that when the train was charging down upon the road roller, if Pablo Muñiz had time to jump and save his life it was his duty to do so. In other words, that it was not his duty to stick by the road roller at the expense of his own life. I charge you that that is true with the qualification which I will give you. Human life is the most important thing that there is in this world. God has put the instinct of self-preservation in us, one of the strongest that there is, and it is the duty of a man to save his life as against mere property. Of course if there is a principle involved, if he was put there to protect it against all sorts of dangers, it might be different; but I charge you that, if a man is in charge of a road roller and it is simply a question of the destruction of the road roller, it is his business to get off if he has time. But if the action of the railroad company has been such as to put him in sudden danger so that he loses his presence of mind, then that is not true. The illustration that has come up in the courts is this: Suppose a man is on a train and there is a threatened collision, he jumps to save his life, and he gets badly injured, and the train goes on, and there is not

IX. Porto Rico.—19.

any accident at all in point of fact.   It would look as if it was foolish for him to jump; but the courts have held, and held correctly, that where there is such impending danger as to cause him to lose his presence of mind, the railroad company is liable for his injury in jumping.   In this case if you find that the action of the railroad company,—the engineer,—was such in any way that Pablo Muñiz could not have seen in time to jump like any ordinary man would have done; if there was anything that frightened him, anything unusual about the action of the company that frightened him, so that he could not exercise his presence of mind, the company would be liable.   But if you find that he himself got the machine up on the track, or so close to it that this collision resulted, but that he could have jumped and saved his own life, it would be contributory negligence on his part if he did not do so.

10. That I think is the case before you.   There are three things to be proved by the plaintiff.   If the plaintiff does not prove all three of those things to your satisfaction, not beyond a reasonable doubt, but so that you are satisfied by a preponderance of the proof that he is entitled to recover; if your mind is left in a state of uncertainty so that you cannot say whether the plaintiff or defendant was guilty of negligence, then you will find for the defendant because the plaintiff would not have proved his case to your satisfaction.   There are three things he must have proved; First, the accident.   The facts of the accident I think are proved.   Second, that the accident was due to the negligence of the railroad company in one of two respects,— first, as to the rails being so high above the roadway that Pablo Muñiz could not get over in a reasonable time; and reasonable under the circumstances.   That would be negligence on the part

Muñiz v. American R. Co.

of the defendant company. Or that there was not a legal absence of chains or guards at the crossing. That you will take in connection with what I have told you. But even if there was that negligence on the part of the defendant, which I am not saying one way or the other, if Pablo Muñiz was guilty of contributory negligence in either of the ways I have mentioned, then you could not find for him. The third element that he will have to prove to your satisfaction is that there was some damage, actual money damage; that there was suffering; and that he is incapacitated or not for the future. That is not absolutely necessary, because he could recover upon what he has expended and what his sufferings amounted to even if he was not disabled for the future. But if he is disabled for the future, that of course will be taken into account if you find for him.

I have been asked to give certain charges. Some of them have already been incorporated in the general charge and some are refused on that account.

Independent of what may be a satisfactory condition of repair to the Commissioner of the Interior, you are instructed that if the defendant company's rails at this crossing were so high above the surface of the crossing as to stall the road roller in question, it being driven in a competent manner, then the company was negligent in the performance of its duty, and if you find that this condition of the crossing was the proximate cause of the accident then you should find for the plaintiff.

In regard to the claim that defendant makes, that even though the plaintiff did not know of the approach of the train until it was a few yards away, he still might have fled from the roller and saved himself, and that therefore he cannot recover because of his failure to do so, you are instructed that this cannot be

Muñiz v. American R. Co.

used as an argument to defeat his recovery, if his danger was due to defendant's negligence and this deprived him of presence of mind. It cannot be required of one who finds himself suddenly in the face of a great danger that he act with the same coolness and good judgment as under circumstances not dangerous. Few men are able to do this; and if the dangerous situation be created by the defendant, then the defendant will not be heard to urge as a defense to defeat plaintiff's claim for damages, that if the plaintiff had done something other than what he did do he might not have been hurt.

Even should you find from the evidence that the defendant was not obliged to have chains at the crossing where the accident occurred, and that plaintiff was negligent in getting his roller upon the track, if you find that the engineer saw the roller there some distance away in time to have stopped his train if he had begun to do so as soon as he saw the roller, and he did not try to stop it until he was close at hand, too late to do so, then the defendant was negligent, and the verdict should be for the plaintiff.

If a driver of a locomotive sees some object or person upon the track ahead, far enough ahead so that he could stop his train in time if he began to try as soon as he saw the object or person, and he fails to begin to try to stop it in time, and later tries and it turns out that he has not time, then such driver is negligent and responsible for any accident which occurs. This is true even if someone is on the track without right, but does not apply if the person on the track contributes, as I have told you, to his own injury.

You are instructed that, from the uncontradicted evidence in the case, the crossing where the accident occurred was on a pub-

lic insular road; that it was originally intended to build the same from Cataño to Rio Piedras, but it had reached only as far as Guaynabo, and that since the same has been open to the use of the public from Cataño at any point beyond where it crossed the defendant's road, it became the duty of the defendant to maintain chains unless excused by competent authority.

Under the law and the evidence in this case, you are instructed that it was the duty of the defendant to maintain chains or some other device of similar character to warn the public of the coming of its trains; but this does not apply if the Department of the Interior excused from such duty.

You are instructed that it makes no difference for the purposes of this case whether defendant did or did not maintain a watchman or gates or chains at the crossing where the accident occurred at the time of the same, in the event that you should find from the evidence that the accident resulted from a cause other than the failure to maintain a watchman or gates or chains.

You are instructed that, even though you believe from the evidence that defendant was guilty of negligence in failing to maintain a watchman or gates or chains at the crossing where the accident occurred, or even if you believe that there was negligence on the part of the employees on the train in question to give due and reasonable warning of the approach thereof by whistle, bell, or otherwise, plaintiff cannot recover if you also believe that he was guilty of contributory negligence as I have defined it.

At the crossings of the kind and in the locality of the one in question, the trains of defendant company have the right of way. I have given that, and I will not give it in detail.

If you believe from the evidence that the plaintiff was aware of the approach of the train, whether or not the signals were given in sufficient time before the collision for him to have jumped from the roller and avoided the accident, he cannot recover except under the circumstances I have above mentioned.

If you believe from the evidence that the plaintiff drove the roller upon the track, and that he could not remove it because of his inexperience or his carelessness or negligence, then such conduct amounts to contributory negligence.

You are instructed that at the time of the accident in question it was not the duty of the defendant company to keep the crossings of the insular highways, including the crossing in question, in repair and on a level with the track of the defendant company. This work was done by the Department of the Interior, and therefore, even if you believe that the road was $1\frac{1}{2}$ inches or more below the level of the rails, and that the accident resulted from this fact, this would not constitute negligence on the part of the defendant. In other words, as to that part of the complaint based upon the alleged neglect of the defendant to keep the road flush with the track, the law and the facts in this case show that this was not the duty of the defendant, but was the duty of the Department of the Interior; and the fact that it was not done, if there was any fault at all, was the fault of the Department of the Interior, and not of the railroad, provided you find from the evidence that the defendant had furnished stone for that purpose according to the agreement which is in evidence.

You have the right to take into consideration the fact that the whistle or other warning of the approach of the train was heard

Muñiz v. American R. Co.

by others in the vicinity, in determining whether plaintiff could or should have heard such whistle or other warning.

There are some charges asked by both sides which I have not read because they are included in the general charge.

Are there any exceptions?

Mr. Wilcox: I want to except to the court's action in failing to give all of those charges requested by the plaintiff which were not given by the court.

And for charging that the plaintiff was not a qualified "maquinista" at the time of the accident.

For charging that there was a contradiction in the evidence as to the fact of the plaintiff's having received $2 a day at any time prior to the accident.

That the railroad company has the right of way over its track without charging that it has this right of way subject to the regulations imposed by law.

That the fact that a countryman in Porto Rico misstates distances in his testimony affords no basis for discrediting or suspecting the remainder of his testimony.

The Court: Some of those charges I do not think I gave, but you may take the exception.

Mr. Wilcox: That if you believe that the plaintiff went on and did not pay attention to whistles and bells and warnings given him, but went on, he is to blame.

The Court: I do not think I said that.

Mr. Wilcox: I thought it assumed as a fact that such warnings and bells were given when it is contradicted in the evidence.

That for the defendant to maintain chains at the crossings of public insular roads in Porto Rico is not an absolute duty.

Muñiz v. American R. Co.

That the Department of the Interior had waived the maintaining of chains at the crossing at which the accident occurred.

That part of the instructions which submitted to the jury the question as to whether the Department of the Interior had agreed to the suppression of the crossing where the accident occurred, he cannot recover.

That if the plaintiff did not stop, look, and listen, although there were no chains at the crossing where the accident occurred he cannot recover.

For failing to charge the jury that the plaintiff could recover, if entitled to recover, for the loss of time from his work.

The Court: I think I gave that.

Mr. Wilcox: I think perhaps your Honor did in the earlier part of the charge, and I think that perhaps your Honor repeated in the latter part but did leave that out in the latter part. I am not quite sure and I thought I would put myself on the safe side.

For charging the jury that it was the duty of the Department of the Interior to keep the crossings in repair, provided the defendant furnished certain stones.

Mr. Dexter: Defendant excepts to the action of your Honor in refusing instructions requested by it, viz., Nos. 1, 2, 6, 7, 10, 14, 15, 19, and 20.

Also, to the action of your Honor in modifying instructions requested by it, to wit, Nos. 5, 16, 17, 24, and 26.

Defendant excepts to the action of your Honor in giving certain instructions requested by plaintiff.

Defendant excepts to the action of your Honor in connection with your oral charge in the following respects: That part of the charge where it is stated that there were two negligences set

Muñiz v. American R. Co.

up or alleged, the second one being that it did not place and maintain chains at this crossing. That is the same point that I urged during the trial.

Further, to that part to the effect that, if there were intervening trees, plaintiff would be excused from stopping, looking, and listening, on the ground that if such were the case the duty is all the greater,—the greater the peril the greater the necessity.

Also to that part of the charge to the effect that if the action of the railroad company had been such as to place plaintiff in danger and he lost his presence of mind, he is not obliged to save himself.

To that part of the charge, if you find the action of the company or its engineer was such that anything frightened Pablo, then he was not required to jump.

To that part of the charge, if the tracks were so high that Pablo could not get over them, the company would be liable on the ground, which is covered I admit by your Honor's charge subsequently, that it was the duty of the Department of the Interior, and, that being the case, this part of the charge is apparently contradictory. To the action of the court in adding to defendant's instruction No. 17 as given, the following words: Provided that you believe the company furnished the stone. The exception to that being based upon the fact that it puts the burden of proof or the affirmative upon the defendant to establish that it furnished the stone, whereas we contend that that should be a matter of proof of the plaintiff, allegation and proof; that the assumption is that, until called for by the Department of the Interior, there was no failure on the part of the defendant.

Muñiz v. American R. Co.

Mr. Wilcox: Would your Honor allow me to add? And for giving certain instructions requested by the defendant.

Gentlemen of the Jury:—Counsel have called my attention to what printers call misprint; that I spoke of Pablo losing his mind. I think I said presence of mind. I think you understood me as to that. And another thing, that I charged you as to the rails being higher than the road. If there is any conflict in the charge, as I do not think there was, the proper charge is that the defendant was not under the liability of keeping the road flush with the track, by an agreement with the Department of the Interior; that is, if you believe that that agreement existed. If you believe there was an agreement between the railroad and the Department of the Interior as shown in evidence, that the Department of the Interior would keep the road flush provided the defendant furnished proper stone, and if you believe from the conduct of the parties that the defendant did furnish the proper stone in this instance, then it was not the duty of the defendant to keep the road flush with the track, and if that was not done that is not negligence which can be charged to the defendant.

Mr. Wilcox: In view of that last instruction, will your Honor allow me a second to prepare a second instruction which seems to be necessary in view of the one just given?

The Court: Well, just do so.

I will wait for that particular matter, but you will retire in charge of the marshal and choose a foreman, of course, the first thing, and when you come to your conclusion he will sign for you one of these verdicts: We, the jury, find for the plaintiff and assess his damages at whatever you find it to be, and the

foreman will sign the verdict. In case, however, you do not think the plaintiff has proved his case, the form of your verdict will be: We, the jury, find for the defendant, and your foreman will sign that, and you will bring into court whichever verdict you find.

Mr. Wilcox then submitted the following written request to charge to the court: That law in the franchise requires defendant to keep crossing in good repair.

The Court: I will grant you an exception.

Mr. Wilcox: Before the jury retires will you allow an exception to that statement that you last gave as to material?

The Court: There was not any change. I just wanted to get it straight.